IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO


**CINDY CARILLO,**

    **Plaintiff,**

**vs.**                                                                                           Civ. No. 00-1087 JP/RLP - ACE

**STATE OF NEW MEXICO WORKER'S**
**COMPENSATION ADMINISTRATION,**
**and RICHARD CROLLET,**

    **Defendants.**


**MEMORANDUM OPINION AND ORDER**

On August 28, 2001, Plaintiff Cindy Carillo filed a motion (Doc. No. 96) requesting the Court to "reconsider or alter or amend" the summary judgment decision of August 21, 2001 (Doc. No. 87), under Fed. R. Civ. P. 59(c), or, alternatively, grant Plaintiff relief from that decision under Fed. R. Civ. P. 60. After considering Plaintiff's arguments and exhaustively examining the record, the Court will deny Plaintiff's motion.

The Court's summary judgment filed August 21, 2001, dismissed Plaintiff's three causes of action that remained after the July 26, 2001, summary judgment had dismissed all of Plaintiff's other claims. *See* Doc. No. 73 at 12, 27, & 28. The three remaining actions were (1) Plaintiff's substantive due process claim, (2) Plaintiff's claim of Title VII retaliation in the form of verbal ridicule, and (3) Plaintiff's Title VII claim of a hostile work environment due to the retaliation she encountered at work in the form of verbal ridicule. Plaintiff's motion does not seek reconsideration of her substantive due process claim. *See* Pl.'s Mot. to Recons. at 2-3.

With regard to Plaintiff's third claim remaining after the summary judgment order of July 26, 2001, the Court instructed Plaintiff's counsel to explain the nature of her hostile work environment retaliation claim. Doc. No. 73 at 28-29 ("I would like the parties to address the question of whether in the Tenth Circuit there is a Title VII cause of action for a hostile work environment based on retaliation [which Plaintiff asserts on page 27 of her brief] that is distinct from that retaliation claim which Plaintiff describes beginning on page 35 of her brief"). Plaintiff never responded to the Court's request, so the Court granted summary judgment on August 21, 2001, on Plaintiff's claim "that Defendants created a hostile work environment on the basis of retaliation." Doc. No. 87 at 2 (internal punctuation omitted). Not only does Plaintiff's motion to reconsider (Doc. No. 96 at 14) fail to address the Court's request, but Plaintiff also continues to muddle the nature of her retaliation claim(s). The problem arises because Plaintiff purports to sue for "retaliation *under* a theory of 'hostile work environment.'" Pl.'s Mot. to Recons. at 14 (emphasis added). Retaliation is a legal shorthand used to refer to discrimination claims under 42 U.S.C. § 2000e-3(a). *Smallwood v. National Can Co.*, 583 F.2d 419, 420 (9th Cir. 1978). Hostile work environment is a legal term of art ordinarily reserved for discrimination claims under 42 U.S.C. § 2000e-2(a). *Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742, 752 (1998) (noting that the term has acquired its "own significance"). Thus, the terms "retaliation" and "hostile work environment" usually refer to two separate causes of action; one does not encompass the other.

Because Plaintiff has never clarified her claim as the Court admonished her to do, the legal basis for the claim remains unclear. Plaintiff may be attempting to assert a cause of action for a hostile work environment under 42 U.S.C. § 2000e-2(a), premised not on sex or national origin,

but rather on retaliation. *See* Pl.'s Amend. Resp. to Def.'s Mot. for Summ. J. at 27. However, the Court is not convinced such a cause of action exists. Hostile work environment claims under 42 U.S.C. 2000e-2(a) permit discrimination claims only when they are based on the plaintiff's "race, color, religion, sex, or national origin."

Unlike hostile work environment claims under 42 U.S.C. § 2000e-2(a), which address an individual's protected status, retaliation claims under 42 U.S.C. § 2000e-3(a) provide redress to any individual who opposes employment practices that the individual reasonably believes to be unlawful, and thereafter suffers an adverse employment action, provided that a causal connection exists between the two events. *Gunnell v. Utah Valley State College*, 152 F.3d 1253, 1262-63 (10th Cir. 1998). Because the class of plaintiffs under 42 U.S.C. § 2000e-3(a) is much broader than the class of plaintiffs under 42 U.S.C. § 2000e-2(a), permitting retaliation to support a cause of action under 42 U.S.C. § 2000e-2(a) would expand the class of plaintiffs under 42 U.S.C. § 2000e-2(a) beyond the statutory limits. Likewise, it would make little sense for a plaintiff to have to successfully demonstrate retaliation, an actionable claim in itself, before proceeding on a discrimination claim under 42 U.S.C. § 2000e-2(a). The Court also notes that the cases Plaintiff cited in her motion to reconsider simply address workplace hostility under 42 U.S.C. § 2000e-3(a). Therefore, the Court holds that 42 U.S.C. § 2000e-2(a) does not support a cause of action premised on retaliation separate from 42 U.S.C. § 2000e-3(a).

It may be that Plaintiff is simply trying to argue that retaliation under 42 U.S.C. § 2000e-3(a) can take the form of verbal hostility from superiors or co-workers at work. If that is what Plaintiff is attempting to do, then the Court agrees that sufficiently severe workplace hostility due to opposition to unlawful employment practices states a cause of action in this Circuit. *See*

*Gunnell*, 152 F.3d at 1264 (holding that co-worker hostility following protected opposition to discrimination, "if sufficiently severe, may constitute 'adverse employment action' for purposes of a retaliation claim"). The Court's summary judgment order of July 26, 2001, allowed Plaintiff's claim under that theory to go forward. Doc. No. 73 at 27. However, Defendants' supplemental briefing filed on August 10, 2001, requested that the Court reconsider that ruling. Def.'s Supplemental Br. in Supp. of Mot. for Summ. J. at 14. The Court did so, granting summary judgment on that theory of retaliation because it lacked the requisite causation. Doc. No. 87 at 3.

Plaintiff now asserts that the Court overlooked proof of causation supporting the claim that her supervisor, Richard Crollett, retaliated against her for engaging in protected conduct. There are many problems with Plaintiff's distorted version of the facts regarding causation. First, Plaintiff makes up or misconstrues the evidence. Plaintiff presents the following as a quotation from Exhibit J, an evaluation performed by Crollett: "no rating would be not given at this time, and would be dependent on the outcome of Ms. Carrillo's pending EEO complaints."[1] *See* Pl.'s Mot. to Recons. at 9. The quotation Plaintiff offers does not exist in the evaluation; it is a fabrication by Plaintiff's counsel. The evaluation actually reads, "No rating or comment regarding [Plaintiff's] willingness to cooperate and take supervisory instruction is made at this time pending the results of a recent complaint filed by [Plaintiff] against me. Otherwise, [Plaintiff] meets the scope of this competency . . . ." Pl.'s Am. Resp. to Def.'s Mot. for Summ. J., Ex. J. The Court admonishes Plaintiff's counsel to take seriously her duty of candor to the Court. *See* Rule 16-303 (A) NMRA 2001 ("A lawyer shall not knowingly make . . . a false statement of material fact or

---

[1] The double negative in this manufactured quotation is the Plaintiff's language, not the Court's, and is nonsensical.

4

law to a tribunal"). Nowhere does the document assert, as does Plaintiff, that her evaluation was "dependent on Plaintiff dismissing her grievances." Pl.'s Reply at 4. (Doc. No. 108). In fact Crollett provided Plaintiff with an evaluation of "M," which stands for means "meets expectations," *see* Pl.'s Am. Resp. to Def.'s Mot. for Summ. J., Ex. J., an action that hardly rises to the level of an adverse employment action. *Meredith v. Beech Aircraft Corp.*, 18 F.3d 890, 896 (10th Cir. 1994).

Another problem confronting Plaintiff is that she claims she made numerous complaints which rose to the level of protected activity under Title VII, without specifically stating which complaint gave rise to the alleged verbal ridicule by Crollet. Plaintiff made two such complaints to the Worker's Compensation Administration during March 1998, two months *before* Crollett was hired as Bureau Chief. Plaintiff's first complaint to the Worker's Compensation Administration in March 1998 concerned the assignment of a pro tem judge to handle a claim that Plaintiff had made against her former employer, CompuSys. Def.'s Mem. in Supp. of Summ. J. at 3, Fact 3. Plaintiff's second complaint in March 1998 was about the Worker's Compensation Administration's reclassification of the Bureau Chief position, requiring the Bureau Chief to be an attorney. Id., Fact 4.

Until Plaintiff filed her reply brief in support of her motion to reconsider, she had asserted that Crollett had made the misquoted evaluation, Exhibit J, in August of 1998. Further, Plaintiff construed certain language penned by Crollett in Exhibit J, which read "a recent complaint filed by [Plaintiff] against me," as referring to Plaintiff's complaint made in March 1998 to the Worker's Compensation Administration about the reclassification of the Bureau Chief position. *See* Pl.'s Am. Resp. to Def.'s Mot. for Summ. J. at 14; Pl.'s Mot. to Recons. at 12. Plaintiff argued that

5

her expressed objection in March 1998 to the requirement that the Bureau Chief be an attorney, which disqualified Plaintiff but qualified Crollett, was protected activity under Title VII that led to Crollett's retaliation.

The date of August 1998 is important because the Court originally held that the August 1998 evaluation gave rise to an causal inference between Plaintiff's complaint made a few months earlier concerning the reclassification of the Bureau Chief position, which favored Crollett, and Crollett's hostility in the form of verbal ridicule. Doc. No. 73 at 27; Doc. No. 87 at 2. However, Plaintiff now informs the Court, correctly by all indications, that the evaluation represented by Exhibit J was actually produced in March of 1999, a year after her protected conduct. Pl.'s Reply at 4. Given this fact, the causal inference on which the Court based its former ruling no longer exists. *See Robbins v. Jefferson County School Dist. R-1*, 186 F.3d 1253, 1258-59 (10th Cir. 1999) (holding that an event occurring nine months after the protected conduct "was both too loosely connected in substance and too far removed in time from the [protected conduct] to provide the requisite nexus" for a causal connection).

Further, the language of the evaluation "pending the results of a recent complaint filed by [Plaintiff] against me," does not refer to any complaint made in March 1998, but rather to Plaintiff's December 1998 complaints about Crollett's failure to grant her leave. Pl.'s Am. Resp. to Def.'s Mot. for Summ. J., Ex. D. at 32. Because Crollett used the phrase "*a recent complaint filed by [Plaintiff] against me*," in the March 1999 evaluation, the language could not refer to either of Plaintiff's complaints made a year earlier to the Worker's Compensation Administration. (Emphasis added.) After examining the record thoroughly, the Court agrees with Defendants that Plaintiff has not presented any evidence that Crollett ever knew about Plaintiff's complaint against

the Worker's Compensation Administration concerning the qualifications of the Bureau Chief. *Gregory v. Daly*, 243 F.3d 687, 700 (2d Cir. 2001) (holding that to establish a prima facie case of retaliation the plaintiff must show "that (1) the employee was engaged in protected activity," and "(2) the employer was aware of that activity").

To establish a prima facie claim for retaliation Plaintiff must demonstrate that she participated in protected activity and thereafter suffered an adverse employment action. The verbal ridicule Plaintiff complains about—Crollett's verbal harassment, his refusal to speak with her, his threats to do whatever it took to have her terminated—began in June 1998 according to Plaintiff's testimony. Pl.'s Am. Resp. to Def.'s Mot. for Summ. J., Ex. A. at pp. 61-63, 71. For the verbal harassment to be considered retaliation, Plaintiff must establish some causal connection to protected activity before June 1998. Because there is no evidence that Crollett was ever aware of Plaintiff's March 1998 complaint concerning the reclassification of the Bureau Chief position, the only other protected activity indicated in the record is Plaintiff's March 1998 complaint to the Worker's Compensation Administration about the assignment of a pro tem judge to handle an ongoing claim Plaintiff had made against her former employer, CompuSys. Def.'s Am. Mem. in Supp. of Summ. J. at 3, Fact 3.

There is evidence in the record that Crollett asked Plaintiff not to use business hours to talk about her complaint concerning the pro tem judge. Pl.'s Am. Resp. to Def.'s Mot. for Summ. J., Ex. I at 3-4. However, throughout the litigation before this Court Plaintiff has never referred to that complaint as precipitating Crollett's verbal retaliation. Plaintiff testified that Crollett retaliated against her because she would not sit next to him during their initial meeting. Id., Ex. A at 71-75. However, Plaintiff waited a year to report that event to her superiors, Id.,

7

Ex. A at 121-22, so refusing to sit beside Crollett in 1998 does not even qualify as opposition to discrimination, a type of protected activity. *Robbins*, 186 F.3d at 1258 (stating that Title VII extends protection to those "who informally voice complaints to their supervisors"). In the EEOC complaint that began the present litigation, Plaintiff swore "that the terms and conditions of my employment have been subjected to retaliation because I have filed formal EEO complaints against my supervisor, Richard Crollett . . . ." Def's Mot. for Summ. J., Pl.'s Dep. Ex. 12 (included as part of Def. Ex. A). Yet, Crollett was not even employed by the Worker's Compensation Administration in March 1998, so the complaints referred to in Plaintiff's EEOC charge cannot be Plaintiff's March 1998 complaints. Thus, according to Plaintiff's sworn testimony throughout this litigation, her March 1998 complaint about the pro tem judge played no part in the verbal ridicule she later encountered at work after Crollett was employed as the Bureau Chief in May 1998. Given Plaintiff's sworn testimony, she cannot now assert that a causal link exists between her complaint about the pro tem judge and Crollett's verbal harassment.

Not even Plaintiff's pleadings support a causal inference based on Plaintiff's March 1998 complaint about the pro tem judge. The Second Amended Complaint, to which the summary judgment motion is directed, never mentions Plaintiff's protected conduct in March of 1998. Doc. No. 32. The Second Amended Complaint states that the retaliation was motivated by the "complaints made by the Plaintiff against Defendant Crollett." At best, Plaintiff's briefing throughout the summary judgment phase of this case refers only to her complaint regarding the Bureau Chief's qualifications as the protected activity that spawned Crollett's retaliation. Pl.'s Am. Resp. to Def.'s Mot. for Summ. J. at 14. Nevertheless, Plaintiff seeks to respond to the Court's August 21, 2001, summary judgment order by presenting a new theory of causation.

Plaintiff should know that the Court is not a

> stage director of the litigation drama—forced to prod the actors through rehearsals until the proper performance is achieved. To do so would not only consume an inordinate amount of time, but would result in courts abandoning their neutrality and becoming advocates in the adversarial process.

*Michell v. City of Moore*, 218 F.3d 1190, 1199 (10th Cir. 2000). Nor does the Court of Appeals in this Circuit condone such a practice. *Id*. Plaintiff's approach to this case exemplifies an impermissible try and try again method to defeat summary judgment.

Now, after the Court has granted summary judgment, Plaintiff's counsel attempts to create a viable factual basis to defeat summary judgment that is at odds with Plaintiff's sworn testimony. Plaintiff had ample time to reflect upon the source of the alleged retaliation when she swore out her EEOC complaint and gave her deposition. To allow Plaintiff to wholly disregard her sworn testimony and substitute in its place a passing reference about a potential source of Crollett's verbal abuse would condone creating sham issues of fact to defeat summary judgment. *See Rios v. Bigler*, 67 F.3d 1543, 1551 (10th Cir. 1995) ("[C]ourts will disregard a contrary affidavit when they conclude that it constitutes an attempt to create a sham fact issue."). Such a practice will not be tolerated by the Court.

Further, Fed. R. Civ. P. 59(e) is not a vehicle to present the Court with facts that were available when the summary judgment motion was first briefed. *Van Skiver v. U.S.*, 952 F.2d 1241, 1243 (10th Cir. 1991) (revisiting the issues already addressed "is not the purpose of a motion to reconsider," and advancing "new arguments or supporting facts which were otherwise available for presentation when the original summary judgment motion was briefed" is inappropriate.) Likewise, Plaintiff has failed to present a compelling case for the Court to
9

exercise its discretion to provide relief under Fed. R. Civ. P. 60(b).  *Id*. ("Relief under Rule 60(b) is discretionary and is warranted only in exceptional circumstances.").  The record here, when viewed in its totality, including all of the types of retaliation Plaintiff asserts (verbal hostility or otherwise), reveals nothing more than what Plaintiff's superiors long ago observed:  Plaintiff and Crollett had "mutual shortcomings in communications and teamwork" that "evolved into a mutual, ongoing, personal dispute."  Pl.'s Am. Resp. to Def.'s Mot. for Summ. J., Ex. M.  Of course, "evidence of personality conflicts in the workplace, while regrettable, does not constitute proof of a Title VII violation."  *Robbins*, 186 F.3d at 1260 (addressing a retaliation cause of action).

IT IS THEREFORE ORDERED that Plaintiff's motion for reconsideration of or relief from the previously entered summary judgments (Doc. No. 96) is DENIED.

_____
CHIEF UNITED STATES DISTRICT JUDGE